Joseph H. Malley (TX State Bar No. 12865900)
Law Offices of Joseph H. Malley P.C.
1045 North Zang Blvd
Dallas, Tx 75208
Telephone: (214) 943-6100
Facsmile: (214) 943-6170
malleylaw@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Aaron Mulvey, individually, and on behalf of a himself and all others similarly situated individuals, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | JURY DEMAND |
| | COMPLAINT FOR: |
| V. | |
| Allstate Insurance Company, and Doe Individuals and Corporations 1-100 inclusive, | Violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. |
| Defendant. | |

### COMPLAINT—CLASS ACTION

**COMES NOW,** Plaintiff, Aaron Mulvey; individually, and on behalf of himself and all others similarly situated individuals, by and through his attorney, Joseph H. Malley, with the Law Offices of Joseph H. Malley, P.C., move for as and for his complaint, and demanding trial by jury, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through his attorney, which are alleged upon knowledge, bring this legal action against Defendant Allstate Insurance Company and Doe Individuals and Corporations 1-100 inclusive. Plaintiffs allegations as to himself and his own

actions, as set forth herein, are based upon his personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigations, Plaintiff believes that substantial evidentiary support exists for the allegations herein, or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

The true names and capacities, whether individual, corporate, associate, director, officer, agent, its employees, officers, directors, legal representatives, heirs, assigns, successors, individual or corporate entities acting within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not, affiliates, branches, joint ventures, franchises, operations under assumed names, websites, and entities over which it exercises supervision or control, or group of individuals associated in fact, although not a legal entity, or other legal entity, of each of the Defendant Doe Individuals and Corporations 1-100 inclusive, (hereinafter referred collectively to as "Doe"), are unknown to Plaintiff at this time and therefore Plaintiff sues Doe by such fictitious names. Plaintiff will ask leave of the Court to amend this complaint to show the true names and capacities of Doe when that information is ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendant designated herein as Doe are legally responsible in some manner for the performance of the acts and omissions described below, and are liable for the events and happenings alleged, and in such manner, proximately caused harm to Plaintiff as further alleged.

Defendant Allstate Insurance Company, and Doe Individuals and Corporations 1-100 inclusive, and each of them, are individually sued as participants, co-conspirators, and

aiders and abettors in the improper acts, plans, schemes, and transactions, including but

not limited to acts, whether individual, corporate, associate, director, officer, agent, its

employees, officers, directors, legal representatives, heirs, assigns, successors, individual or

corporate entities acting within a partnership, joint venture, trust, association, union,

subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not,

affiliates, branches, joint ventures, franchises, operations under assumed names, websites,

and entities over which it exercises supervision or control, or group of individuals

associated in fact, although not a legal entity, or other legal entity, of each of the

Defendant, that are the subject of this complaint.

## I.
## NATURE OF ACTION

1. Plaintiff brings this consumer Class Action lawsuit pursuant to Federal Rules of Civil
   Procedure 23(a), (b)(1), (b)(2), and (b)(3), on behalf of himself, and a proposed class of
   similarly situated Individuals, Putative Class Members, (hereinafter referred collectively
   to as "Class Members"), for violations of the Driver's Privacy Protection Act, 18 U.S.C.
   §2721 et seq.

2. Congress enacted the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq,
   (hereinafter referred to as "DPPA"), to restrict access to personal information
   contained within motor vehicle records, (hereinafter referred to as "MVRs"), held by
   State Department of Motor Vehicles, and provided for liability wherein an individual or
   corporation improperly obtains, discloses, and/or re-sells such records for
   unauthorized uses.

3. Defendant Allstate Insurance Company obtained Plaintiff and Class Members' motor vehicle records from the State of Texas Motor Vehicle Department, for direct marketing and solicitation, without authorization and express consent, an unauthorized DPPA permissible use, in order to perpetuate activity that violated the Federal Driver Privacy Protection Act, perpetuating such activity in a heedless, willful, and wanton manner, knowingly disregarding the safety and privacy of Plaintiff and Class Members.

4. Defendant Allstate Insurance Company then intentionally, or in the alternative, negligently re-disclosed and/or resold Plaintiff and Class Members' motor vehicle records from the Texas Motor Vehicle Department to Defendant's Affiliates, for direct marketing and solicitation, without authorization and express consent, in order to perpetuate activity that violated the Federal Driver Privacy Protection Act perpetuating such activity in a heedless, willful, and wanton manner, knowingly disregarding the privacy and safety of Plaintiff and Class Members, and on occasions, acting, or omitting to act, in a negligent manner, (*Gordon v. Softech Int'l, Inc.,* U.S., No. 13-533, *cert. den.* 1/13/14; *Arcanum Investigations, Inc. v. Gordon,* U.S., No. 13-539, *cert. den.* 1/13/14), such acts uncovered by the State of Texas Motor Vehicle Department;

5. Plaintiff and the Class suffered an injury in fact, an invasion of a legally protected interest, pursuant to 18 U.S.C. §2724 (b)(1), which was concrete and particularized, a harm that was actual or imminent, and seek liquidated damages in the amount of $2500 each.

## II.
## PARTIES

6. Plaintiff Aaron Mulvey is an individual residing in Dallas County, Texas, and is a licensed and registered driver in the State of Texas

7. Defendant Allstate Insurance Company is an Illinois corporation, with its principal place of business at 2775 Sanders Road, Northbrook, Illinois 60062. Defendant Allstate Insurance Company is a subsidiary of The Allstate Corporation. The Allstate Corporation is a Delaware corporation with a principal place of business in Northbrook, Illinois. The Allstate Corporation is licensed to do business in the State of Illinois. Upon information and belief, The Allstate Corporation serves as the holding company for Allstate Insurance Company and its business is conducted principally through Allstate Insurance Company, and their affiliates.  Allstate Insurance Company is licensed and authorized to conduct business as an insurance company in the State of Texas. The Allstate Corporation and Allstate Insurance Company are collectively referred to herein as "Allstate." Defendant Allstate Insurance Company is doing business in Texas at the following location:  8675 Freeport Parkway, Building E-4, Irving Texas 75063. Defendant Allstate Insurance Company may be served with process at CT Corporation System, 1999 Bryan Street Suite 900 Dallas, Texas 75201.

## III.
## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

9. This Court has jurisdiction over Defendant Allstate Insurance Company, a corporation

operating in the State of Texas, doing business in Texas.

10. Plaintiff is a citizen and resident of Dallas County, Texas, and asserts and claims on behalf of a proposed class whose members are domiciled within Texas. There is minimal diversity of citizenship between proposed Class Members and Defendant.

11. This court has Federal question jurisdiction as the complaint alleges violations of the following:

   a. Violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721, et. seq.

12. Subject-matter jurisdiction exists in this Court related to this action pursuant to 28 U.S.C. § 1332.  The aggregate claims of Plaintiff and the proposed Class Members exceed the sum or value of $5,000,000.00.

13. Venue is proper in this District, and vests jurisdiction in the State of Texas and Federal Courts in this district, under 28 U.S.C. §1391(b) and (c) against Defendant. A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred within this state, and within this district. Thus, mandatory jurisdiction in this U.S. District Court vests for any class member, wherever they reside, which occurred within Texas.

14. Minimal diversity of citizenship exists in this action, providing jurisdiction as proper in the Court, since Defendant conducted activity within this state and in this district during the class period, and Plaintiff include citizens and residents of this state and district, and assert claims on behalf of a proposed class whose members; thus, there is minimal diversity of citizenship between proposed Class Members and the Defendant.

15. This is the judicial district wherein the basis of the conduct complained of herein

involving the Defendant was implemented, in whole or part.  Motor vehicle records

were obtained from this state and used within the state and district; therefore,

evidence of conduct as alleged in this complaint is located in this judicial district.

## V.
## PLAINTIFF OCCURRENCES

16. Plaintiff ("Plaintiff") is a Texas resident. Class Members are Texas residents that

experienced the same occurrences as Plaintiff:

a. Plaintiff purchased a motor vehicle and registered it with the Texas Motor
Vehicle Department during the Class Period. Plaintiff was legally obligated to
provide personal and sensitive identifying information within the motor vehicle
information provided to the Texas Motor Vehicle Department for purposes
required by law in order to be legally able to operate his vehicle within his
state, an obligation that did not require the release of such to any individual or
corporation that did not possess legal rights to access his motor vehicle
records;

b. Plaintiff's motor vehicle records were obtained by Defendant for impermissible
DPPA purposes, without notice or express consent of the Plaintiff;

c. Plaintiff was unaware that Defendant would obtain, re-disclose and/or resell
his motor vehicle records for impermissible DPPA purposes. Plaintiff could not
have learned about Defendant's access to his motor vehicle records except
through unreasonably burdensome efforts, such as those required in the
investigation underlying these allegations;

d. Plaintiff had Defendant then re-disclose and/or re-sell his motor vehicle
records, intentionally, or in the alternative, negligently, to Defendant's
Affiliates, for impermissible DPPA purposes;

e. Plaintiff became the victim of privacy and security violations due to
Defendant's unauthorized access to, and use of, his motor vehicle records,
suffering harm, and seek monetary and injunctive redress. **(See Mulvey
Declaration).**

V.
## STATEMENT OF FACTS

### A. Introduction

17. To protect the privacy and safety of licensed drivers, and to limit misuse of the information contained in these government record systems, Congress enacted the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725. The Act imposed strict rules for collecting the personal information in motor vehicle records; moreover, provided for liability in cases where an individual or corporation improperly collects, discloses, uses, or sells such records. Congress paid particular attention to differences between motor vehicle records and other public records containing similar information, which it decided not to regulate. One concern that motivated enactment of the DPPA was that personal information in motor vehicle records, including names and addresses, is associated with license plate numbers, which drivers must display to the general public:

> *"Unlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold his names and address[es] from strangers, and this limit his access to personal identifiable information" in other records".*

140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards)

18. Due to the concerns regarding the improper uses of motor vehicle records by the marketing industry, the DPPA, initially enacted in 1994, and permitted an individual to "opt-out" if they didn't want to be solicited by direct marketers, was amended in October 1999 to "opt-in", now requiring express written consent for direct marketing and solicitation, Pub. L. No. 106-69, 113 Stat. 986 (Oct. 9, 1999). Personal information

in motor vehicle records could now be disclosed in certain circumstances for bulk distribution for surveys, marketing, or solicitation, but only if individuals are provided an opportunity, in a clear and conspicuous manner, to block such use of information pertaining to them. 18 U.S.C. §2721(b)(12). Senator Shelby, the principal sponsor, warned against "unrelated secondary uses" of motor vehicle information without prior approval (i.e., for commercial sale in the open market), when the records have been obtained only for the purpose of vehicle registration. Senator Shelby underlined that the purpose of the DPPA was to ensure that individuals must "grant his consent" before the state or a third party can sell or release highly restricted personal information *"when it is to be used for the purpose of direct marketing, solicitations, or individual look-up."* 4 Hrg. Before the Subcomm. on Transp. of the S. Comm on Appropriations, 106th Cong. (2000) (statement of Sen. Shelby, Sponsor), available at 2000 WL 374404.

19. The DPPA defines *"personal information"* as *"information that identifies an individual, including an individual's photograph, social security number, driver identification number, name address (but not the five (5) digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."* 18 U.S.C. §2725(3). *"[M]otor vehicle record"* is defined as *"any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."* 18 U.S.C. §2725(1).

20. The DPPA's general prohibition on disclosure of personal information is subject to fourteen (14) exceptions—the permissible purposes—which allow for the limited

disclosure of personal information. The 14 permitted uses of DMV data are designed to *"strik[e] a critical balance between an individual's fundamental right to privacy and safety and the legitimate governmental and business needs for th[e] information."* 140 Cong. Rec. 7925 (1994) (remarks of Rep. Moran). The DPPA never explicitly lists any prohibited uses; rather, it generally prohibits all but the fourteen permissible uses enumerated in section Sections 2721(a) and 2722(a), thus nondisclosure of personal information is the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title."). Section 2721(b) then lists fourteen discrete exceptions to non-disclosure. The pertinent permissible uses related to marketing are:

> *(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.*

> *(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.*

21. According to section 2721(c), "[a]n authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or re-disclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An Authorized Recipient under (b)(11) may resell or re-disclose personal information for any purpose. An Authorized Recipient under section (b)(12) may resell or re-disclose personal information pursuant to subsection (b)(12)."

18 U.S.C. § 2721(c).

22. The DPPA creates a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under section 2721(b). 18 U.S.C. § 2724(a). *"It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title."* 18 U.S.C. § 2722(a).

23. The DPPA expressly provides for liquidated damages independent of showing actual damages, where all damages are subject to the Court's discretion. The remedy for a violation of the DPPA is unambiguous under the plain terms of the statute. In *Kehoe v. Federal Bank & Trust*, the Eleventh Circuit held, based on the unambiguous language of the DPPA, which actual damages are not necessary in order to recover under the liquidated damages provision of the DPPA. 421 F.3d 1209, 1212 (11th Cir. 2005) (citing *Doe v. Chao,* 540 U.S. 614 (2004)). The DPPA remedies are as follows:

*(b) Remedies-The court may award-*
*(1) Actual damages, but not less than liquidated damages in the amount of $2,500;*
*(2) Punitive damages upon proof of willful or reckless disregard of the law;*
*(3) Reasonable attorneys' fees and other litigation costs reasonably incurred; and*
*(4) Such other preliminary and equitable relief as the court determines to be appropriate.*

24. The Driver's Privacy Protection Act, 18 U.S.C. §2724(a) "sets forth the three elements giving rise to liability, i.e., that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted." Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stevens, P.A., 525 F.3d 1107, 1111 (11th Cir. 2008), Taylor v. Acxiom. Corp. 612 F.3d. 325. 5th

Cir. 7/14/10. 5th Cir.  Defendant's activity satisfied all three elements giving rise to

DPPA liability.

B. **Defendant Allstate Insurance Company signed service contract with the Texas Department of Motor Vehicles in order to obtain motor vehicle records, pursuant to the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725.**

25. On June 21, 2012, Defendant Allstate Insurance Company, by and through its

representative, John McHugh, Senior Product Analyst, entered into a contract with the

Texas Department of Motor Vehicles to obtain weekly updates to the VTR database of

motor vehicle records, referenced as: "*SERVICE CONTRACT FOR PURCHASE OF TEXAS*

*MOTOR VEHICLE TITLE AND REGISTRATION (VTR) DATABASE*". The motor vehicle

record data was sent, via FTP, to 8675 Freeport Parkway, Bldg. E-4, Irving, Texas

75063. (**See Exhibit A**).

26. This contract included a "**CERTIFICATION OF USE**", obligating Defendant to abide by

the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq., and emphasized that the

Defendant must have DPPA permissible uses to obtain the motor vehicle records;

furthermore, it prohibited the disclosure and resale of the personal information unless

such information is used according to specifically enumerated "permissible uses",

cited within the contract:

---

ATTACHMENT A:
# CERTIFICATION OF USE

Note:   Effective December 1, 2000, the State may release privacy protected personal information contained in motor vehicle records (MVRs), as defined in 18 U.S.C. §2725, only if the Purchaser certifies its intended uses of the information in this Attachment.   Certified intended uses include only those uses for which the Purchaser itself will actually employ the information; certified intended uses do not include uses that are speculative or that will be engaged in by persons acquiring the information from the Purchaser.  If the Purchaser's intended use of the information is not one of the permitted uses, the State will not release the privacy protected personal information.

---

27. The "**CERTIFICATION OF USE**" obligated Defendant, as the purchaser of the motor vehicle records to have the permissible use "itself", thus not qualifying as a "reseller" if persons and/or entities acquiring such records from Defendant had a permissible use while Defendant didn't possess the permissible use, as noted specifically within Attachment A:

- Certified intended uses include only those uses for which the Purchaser itself will actually employ the information;

- Certified intended uses do not include uses that are speculative or that will be engaged in by persons acquiring the information from the Purchaser.

28. Defendant Allstate's representative certified four (4) permissible uses within the contract, specifically, for use in connection with the following: 1. (I)(A)(2) and (II)(A)(2)(3): motor vehicle theft and motor vehicle product alterations, recalls, or advisories; 2. (I)(B)(2): a private person or entity acting on behalf of a governmental agency in carrying out the functions of the agency; 3. (II)(B)(1)(2): to verify the accuracy of personal information submitted by the individual to a business; and 4. (II)(E): use by an insurer or insurance support organization.

29. In order to qualify pursuant to (I)(A)(2) and (II)(A)(2)(3), the "**Motor Vehicle Safety and Recall Exception,**":

> **(1) Permissible Uses.—"**Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301,

305, and 321–331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:…

**(2)** For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers."

30. In order to qualify pursuant to (I)(B)(2), the "**Government Exception**":

**(1) Permissible Uses.—**"For use by any government <u>agency</u>, including any court or law enforcement <u>agency</u>, in carrying out its functions, or any private <u>person</u> or entity acting on behalf of a Federal, State, or local agency in carrying out its functions".

31. In order to qualify pursuant to (I)(A)(2) and (II)(A)(2)(3), the "**Normal Course of Business Exception**":

**(1) Permissible Uses.—**"For use in the normal course of business by a legitimate business or its agents, <u>employees</u>, or contractors, but only—

**(A)** to verify the accuracy of <u>personal information</u> submitted by the individual to the business or its agents, employees, or contractors; and

**(B)** if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

32. In order to qualify pursuant to (II)(E), the "**Insurance Exception**":

**(1) Permissible Uses.—**"For use by any insurer or insurance support <u>organization</u>, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

C. **Defendant Allstate Insurance Company violated the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq., proof of such violations, the findings of a covert investigation conducted by the Office of the General Counsel for the Texas Department of Motor Vehicles**

33. An Open Records Request was sent to the Texas Department of Motor Vehicle requesting records related to any person and/or entity violating the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725.  Jon Lawson, Associate General Counsel with the Texas Department of Motor Vehicles responded, providing a copy of the notice letter sent to Defendant Allstate Insurance Company, evidencing violations of the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725.  The notice letter was redacted, citing exceptions from full disclosure, Section 552.139 of the Government code, **(See Exhibit B).**

34. Unbeknownst to Defendant Allstate Insurance Company, the Texas Department of Motor Vehicles, in conjunction with the Office of the General Counsel for the Texas Department of Motor Vehicles, had implemented a compliance procedure to determine if any person or company obtaining bulk motor vehicle records, and/or periodic updates, from the Texas Department of Motor Vehicles, were using such for impermissible purposes, a procedure which essentially involved inserting "seeded" data into the motor vehicle records; (hereinafter referred to as "Test Data").  Each Bulk Requestor was individually assigned test data to allow a mechanism to confirm improper uses. The purpose was to monitor, without notice, the use of motor vehicle records obtained by Bulk Requestors in order to determine if this test data was being used for purposes that included direct marketing and solicitation, a violation of the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725. The monitoring

process was administered by the Texas Department of Motor Vehicles.

35. The Texas Department of Motor Vehicles, in conjunction with the Office of the

General Counsel for the Texas Department of Motor Vehicles, then conducted a covert

investigation to determine if "Bulk Requestors", persons or entities obtaining the

state's motor vehicle records, and/or all periodic updates, in bulk from the Texas

Department of Motor Vehicles, were in fact violating the Driver's Privacy Protection

Act, 18 U.S.C. §2721 et seq.

36. Reportedly, direct marketing and solicitation activities, using the Test Data assigned

to Defendant Allstate Insurance Company, was detected by the Texas Department of

Motor Vehicles. An investigation by the Office of the General Counsel for the Texas

Department of Motor Vehicles uncovered evidence that Defendant Allstate Insurance

Company was violating the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.

37. On May 10, 2017, David Duncan, General Counsel for the Texas Department of Motor

Vehicles sent Ms. Rita Hurley, a representative of Defendant Allstate Insurance

Company, a notice letter terminating Defendant's access to Texas motor vehicle

records stating in part:

> *"...The department has determined that Allstate disclosed confidential*
> *information which was subsequently used for an unauthorized purpose,*
> *specifically for solicitation or advisement. Such use is in violation of state*
> *and federal law, as well as the contract signed by your company when it*
> *began receiving the information..."* **(See Exhibit B).**

38. General Counsel Duncan explained in detail the process by which the Texas

Department of Motor Vehicles, in conjunction with the Office of the General Counsel

for the Texas Department of Motor Vehicles, found the Defendant to be in violation of

the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. as follows:

> *" The department uses confidential data markers which are unique to each recipient of the list, and the marker associated with Allstate's version of the list was used in a marketing solicitation".*

39. In response to the production of this record, an additional Open Records Request was sent to Associate General Counsel Lawson questioning the redaction; furthermore, seeking network information which would have revealed discoverable evidence of the identity of persons and/or companies associated with Defendant Allstate Insurance Company in acts violating the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725. Such requests were denied citing the confidentiality of the records:

> **"... that is actually TxDMV's network security information "collected, assembled, or maintained by or for a governmental entity to prevent, detect, or investigate criminal activity. 552.139(b)(2)".**

40. A request for an Attorney General's opinion regarding the failure to produce the redacted portions of the notice letter was granted; however, an opinion by the Office of the Attorney General denied the requested information. **(See Exhibit C).** Associate General Counsel Lawson did however provide another copy of the notice letter with less redacted information, **(See Exhibit D).**

41. In response to an additional Open Records Requests seeking information regarding the scope of Defendant's contract to obtain Weekly Updates to the VTR Database, Jon Lawson, Associate General Counsel Jon Lawson noted:

> *" The specific records, of course, would be motor vehicle record information, subject to both Government Code 552.130 and Transportation Code Chapter 730 restrictions. They elected to receive weekly updates to the database (as noted in the contract)...it would be one file, per week, since 6/21/12)".*

42. The VTR database obtained by Defendant included the registration of motor vehicles sold or purchased with the Texas Department of Motor Vehicles since 2012. An Open

Records Request was sent to inquire as to the volume of motor vehicle records

obtained by Defendant Allstate Insurance Company. Mr. Lawson responded with an

estimate:

> **"….the number is 24 million (registered motorists, roughly) divided by 52 weeks…You could probably say over a 5-year period our weekly subscribers get the whole 24 million…"**

43. Defendant Allstate Insurance Company also failed to inform the Texas Department of

Motor Vehicles immediately about unauthorized access or disclosure, as required by

the SERVICE CONTRACT FOR PURCHASE OF TEXAS MOTOR VEHICLE TITLE AND

REGISTRATION (VTR) DATABASE, and the Driver's Privacy Protection Act of 1994, 18

U.S.C. §§2721-2725:

> **"The Purchaser shall immediately inform the State if privacy protected personal information provided to the Purchaser is disclosed in violation of the DPPAs. This obligation applies whether the disclosure was by the Purchaser or by a person or entity that acquired privacy protected information from the Purchaser, directly or indirectly."**

44. Pursuant to the Office of the General Counsel's notice letter, a request for production

of documents was sought, an obligation that required production in a timely manner;

moreover, required production of records related to five (5) years of resale or

redisclosure of the confidential data, as authorized by the following:

a. Driver's Privacy Protection Act of 1994, 18 U.S.C. §2721(c)
RESALE OR REDISCLOSURE-

> *"An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or*

*redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request."*

**b.** "SERVICE CONTRACT FOR PURCHASE OF TEXAS MOTOR VEHICLE TITLE AND REGISTRATION (VTR) DATABASE", (See Exhibit 1, Section (3)(D)).

*"The Purchaser must maintain records of any entity or person that received the information and the permitted use for which it was obtained. These records must be maintained for a period of not less than five (5) years and must be made available to the State for inspection, upon request. Any person or entity obtaining protected information from the Purchaser, directly or indirectly, must comply fully with the provisions of the DPPAs. Any violation of the above law by a person or entity acquiring protected information from the Purchaser, directly or indirectly\* will be considered a breach of this contract by the Purchaser."*

45. Reportedly, Defendant Allstate Insurance Company has intentionally ignored requests by the Office of the General Counsel for the Texas Department of Motor Vehicles to provide information for the past year, Associate General Counsel Jon Lawson noting:

**"To date, Allstate has not sent us any records related to that letter. We've had several phone calls with their in-house counsel, but no records. "**

## VI.
## DEFENDANT'S HARMFUL BUSINESS PRACTICES

46. Defendant's activities occurred throughout Texas, obtaining the motor vehicle records of Plaintiff and the Class Members for purposes not permitted - a course of action, and a body of information, that is protected from access and disclosure by federal law.

47. Without remedy, Plaintiff and Class Members' privacy will continue to be violated by

Defendant and a multitude of companies affiliated with Defendant — companies they've never heard of, companies they have no relationship with, and companies they would never choose to trust with their motor vehicle records.

48. Defendant has, either directly, or by aiding, abetting, and/or conspiring to do so, willfully, knowingly, negligently, or recklessly, disclosed, exploited, misappropriated and/or engaged in widespread commercial usage of Plaintiff and class member's motor vehicle records, obtaining personal information for Defendant's own benefit, without legal authorization, and without Plaintiff and class member's knowledge, authorization, or consent. Such conduct constitutes a highly offensive and dangerous invasion of Plaintiff and the class member's privacy.

49. At all times material, Defendant, and agents of the Defendant, knew, or reasonably should have known, that his actions violated clearly established statutory rights of the Plaintiff and the Class Members.

50. By obtaining and storing Plaintiffs' and Class Members' Personal Information, Defendant Allstate Insurance Company undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard that information, to prevent disclosure of that information, to guard the information from unauthorized access, and to detect any attempted or actual access to its IT systems. Defendant Allstate Insurance Company admitted, assumed, acknowledged and agreed through its statements, conduct, policies and/or procedures, when Defendant Allstate Insurance Company signed the contract with the Texas Department of Motor vehicles, that Plaintiffs' and Class Members' Personal Information was private and confidential, and that it should exercise reasonable care to protect the Personal Information.

51. Defendant Allstate Insurance Company failed in its duty to Plaintiffs and the Class Members to adequately protect and safeguard this information, by knowingly disregarding industry standards, despite obvious risk to the impacted parties, and by allowing unauthorized access to occur. Defendant Allstate Insurance Company failed to provide adequate supervision and oversight of the Personal Information, despite the publicized risks and foreseeable harm to the impacted individuals of access to, which permitted the information actual and potential dissemination into the public domain.

52. Defendant Allstate Insurance Company's conduct departed from all reasonable standards of care, including, but not limited to: (1) failing to adequately protect the Personal Information, (2) failing to conduct regular security audits; (3) failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class Members' Personal Information; and (4) failing to provide Plaintiffs and Class Members with timely sufficient notice that their Personal Information had been compromised.

53. As a direct and proximate result of Defendant Allstate Insurance Company's acts or failures to act, Plaintiffs and the Class have suffered personal, financial, social and compensable injury that is continuing, including, but not limited to, the kind of damages alleged herein arising from the misuse of personal information, fraud and/or identity theft, which may have already occurred or may take months if not years to discover given the far-reaching, adverse, and detrimental consequences of identity theft and loss of privacy. The nature of other forms of financial damage and injury may take years to detect and the potential scope can only be assessed after a thorough

investigation into the facts and events surrounding the unauthorized access to the

personal information.

54. As a result of Defendant Allstate Insurance Company's negligent acts and omissions,

Plaintiffs and Class Members have suffered harm.

## VII.
## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of himself, and Class Members, as a class action,

pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification

of the following class:

> **All persons in Texas who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant obtain, directly or indirectly, their motor vehicle records from the Texas Department of Motor Vehicles, to re-disclose, and/or resell for purposes that violate the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq., and seek liquidated damages in the amount of $2500 each, pursuant to 18 U.S.C. §2724(b)(1) et seq.**

56. Excluded from the class are the Defendant, its employees, officers, directors, agent,

legal representatives, heirs, assigns, successors, individual or corporate entities acting

within a partnership, joint venture, trust, association, union, subsidiaries, whether

wholly or partially owned, divisions, whether incorporated or not, affiliates, branches,

joint ventures, franchises, operations under assumed names, websites, and entities

over which Defendant exercises supervision or control, or group of individuals

associated in fact, although not a legal entity, or other legal entity, in addition to

Plaintiff legal counsel, employees, and his immediate family, the judicial officers and

his immediate family, and associated court staff assigned to this case, and all persons

within the third degree of consanguinity, to any such persons.

57. Plaintiff reserves the right to revise these definitions of the classes based on facts

    they learn as litigation progresses.

58. The class consists of millions, if not tens of millions, of individuals and other entities,

    making joinder impractical.

59. The members of the class are identifiable from the information and records in the

    custody of the Defendant identified in the Class definition, and the Texas Motor

    Vehicle Department which provided motor vehicle records to Defendant.

60. Defendant's conduct, as complained of herein, is generally applicable to the Class,

    thereby making appropriate final injunctive relief or corresponding declaratory relief

    with respect to the Class as a whole.

61. The claims of Plaintiff are typical of the claims of all other Class Members.

62. Plaintiff will fairly and adequately represent and protect the interests of the class.

    Plaintiff has suffered damages in his own capacity from the practices complained of, in

    that his personal information or highly restricted personal information has been

    unlawfully obtained, disclosed, and sold for a profit, and is ready, willing, and able, to

    serve as Class Representative.

63. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf

    of the Class Members; moreover, have the financial resources to do so. Neither

    Plaintiff, nor his counsel, have any interest that might cause them not to vigorously

    pursue this action. Plaintiff has retained counsel with substantial experience in

    prosecuting complex litigation and class actions involving unlawful commercial

    practices.

64. A class action will cause an orderly and expeditious administration of Class Members' claims and economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. Individual Class Members are unlikely to be aware of their rights and are not likely to be in a position (either through experience or financially) to commence individual litigation against Defendant.

65. Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants; furthermore, it promotes consistency and efficiency of adjudication.

66. The Defendant has acted and failed to act on grounds generally applicable to Plaintiff and all other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

67. The factual and legal basis of Defendant's liability to Plaintiff, and to the other Class Members are the same, resulting in an injury to Plaintiff, and all of the other Class Members. Plaintiff, and the other Class Members, have all suffered harm and damages due to Defendant's wrongful conduct.

68. Certification of a class under Fed. R. Civ. P. 23 is appropriate because Plaintiff and the Class Members have questions of law and fact that are common to the class that predominate over any questions affecting only individual members of the Class, and a class action is superior to all other available methods for fair and efficient adjudication of this controversy in fact, the wrongs suffered and remedies sought by Plaintiff and

the other members of the class are premised upon an unlawful scheme participated in by Defendant.

69. There are many questions of law and fact common to Plaintiff and the Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions for the class include, but are not limited to the following:

1. whether Defendant obtained, re-disclosed, and/or resold Plaintiff and Class Members' personal information contained within motor vehicle records maintained by the Texas Department of Motor Vehicles;

2. whether Defendant, and/or Defendant's Affiliates, had a DPPA permissible use to obtain, re-disclose, and/or resell Plaintiff and Class Members' personal information contained within motor vehicle records obtained from the Texas Department of Motor Vehicles;

3. whether Defendant, and/or Defendant's Affiliates, obtained the written express consent of Plaintiff and Class Members to obtain, re-disclose, and/or resell Plaintiff and Class Members' personal information contained within motor vehicle records obtained from the Texas Department of Motor Vehicles;

4. whether Defendant, and/or Defendant's Affiliates, acted knowingly when it obtained, re-disclosed, and/or resold Plaintiff and Class Members' personal information contained within motor vehicle records maintained by the State motor vehicle departments;

5. whether Defendant, and/or Defendant's Affiliates', conduct described herein violates the Driver's Privacy Protection Act, 18 U.S.C. §2721;

6. whether Defendant, as custodian of the Plaintiff and class member's motor vehicle records, possessed a duty to use reasonable care to investigate and determine the validity of the claimed DPPA permissible uses by Defendant's Affiliates,  prior to, during, and after, re-disclosing, and/or re-selling Plaintiff and class member's motor vehicle records to such entities, and if so, whether Defendant intentionally, or in the alternative, negligently failed in this obligation;

7. whether Defendant, and/or Defendant's Affiliates, complied with 18 U.S.C. §2721 (c), the obligation to maintain a record of any person and/or company that Defendant re-disclosed, and /or resold Plaintiff and Class Members' personal information contained within motor vehicle records maintained by the Texas Motor

Vehicle Department for a period of five (5) years; and if so, whether Defendant, and/or Defendant's Affiliates, intentionally, or in the alternative, negligently failed in this obligation;

8. the nature, and extent of Plaintiff and class member's Class damages;

9. the nature, and extent of all statutory penalties, including liquidated damages of $2500.00 for which Defendant, and/or Defendant's Affiliates, are liable for, and legally obligated to, Plaintiff and Class Members;

10. whether Plaintiff and Class Members are entitled to appropriate injunctive relief against Defendant, and/or Defendant's Affiliates, and

11. whether punitive damages are appropriate.

70. The questions of law and fact common to Class Members predominate over any questions affecting only individual members; and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
### Violations of the Driver's Privacy Protection Act, § 18 U.S.C. § 2721 et seq.: On Behalf of the Class, and against Defendant

71. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

72. As set forth herein, Defendant violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721, by engaging in the acts alleged in this complaint.

73. The Driver's Privacy Protection Act, 18 U.S.C. §2721 (a) et seq., regulates obtaining and disclosing personal information gathered by State Departments of Motor Vehicles, making it unlawful for a person or organization from knowingly obtaining or disclosing personal information, or highly restricted personal information contained in motor vehicle records for any purpose not specifically enumerated under §2721(b).

74. Accordingly, Defendant violated 18 U.S.C. §2721 et seq. by intentionally obtaining, re-disclosing, and/or re-selling Plaintiff and Class Members' motor vehicle records

without knowledge, consent, or authorization, for purposes not specifically

enumerated with the act.

75. Plaintiff and Class Members are "person[s] referencing" "an individual, organization, or entity, but does not include a State or agency thereof", within the meaning of 18 U.S.C. §2725(2).

76. 18 U.S.C. § 2724(a) prohibits the release and disclosure of personal information, as defined in 18 U.S.C. § 2725(3) about an individual obtained by the State Motor Vehicle Department except as provided in subsection (b), permissible uses, regulates the prohibition on release and use of certain personal information from State motor vehicle records.

77. 18 U.S.C. §2725(3) "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the five (5) digit zip code), telephone number, and medical or disability information; but does not include information on vehicular accidents, driving violations, and driver's status.

78. The contents of the records obtained by Defendant pertaining to the Plaintiff and Class Members constitute a "motor vehicle record", referencing "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles", within the meaning of 18 U.S.C. §2725(1).

79. 18 U.S.C. § 2722(b), prohibits any organization or entity from making any false representation to obtain any personal information or highly restricted personal information from an individual's motor vehicle record.

80. Defendant violated 18 U.S.C. §2721 (b), individually, and in concert, by making false representations to knowingly obtain the Plaintiff and class member' motor vehicle records, directly or indirectly, for marketing and solicitation purposes, without express consent.

81. 18 U.S.C. §2725(5) "express consent" means consent in writing, including consent conveyed electronically that bears an electronic signature as defined in section 106(5) of Public Law 106–229.

82. 18 U.S.C. § 2721(c), permits an "Authorized Recipient" of personal information (except for some exceptions) to re-disclose and/or re-sell the information, but only for a claimed use permitted under 18 U.S.C. § 2721(b). Defendant was not an Authorized Recipient, thereby violating 18 U.S.C. § 2721(c).

83. Defendant violated 18 U.S.C. § 2721(c) by re-disclosing and/or re-selling Plaintiff and class member's information to Defendant's Affiliates, non-authorized recipients.

84. Defendant is liable directly and/or vicariously for re-disclosure and resale to Defendant's Affiliates, failing to use reasonable care to investigate Defendant Affiliate's claimed DPPA permissible uses when re-disclosing and/or re-selling Plaintiff and class member's motor vehicle records to such entities, or failing to use reasonable care to secure the Plaintiff and class member's information from improper access.

85. 18 U.S.C. § 2722(b)(12), prohibits the use of motor vehicle records for bulk distribution for surveys, marketing or solicitations unless the State has obtained the express consent of the person to whom such personal information pertains. Defendant violated 18 U.S.C. § 2722(b)(12) by obtaining, re-disclosing, and/or re-

selling the motor vehicle records for purposes that include direct marketing, without

the express consent of Plaintiff and Class Members.

86. Defendant's Affiliates violated 18 U.S.C. § 2721(c) as recipients of the Plaintiff and

class member's motor vehicle records from Defendant, failing to use reasonable care

to investigate and determine the validity of the claimed DPPA permissible uses by

Defendant, used to obtain the motor vehicle records from the Texas Department of

Motor Vehicles, prior to, during, and after, obtaining Plaintiff and class member's

motor vehicle records.

87. Plaintiff and the class have suffered harm, as alleged herein, and pursuant to 18 U.S.C.

§ 2724(b)(1), seek liquidated damages in the amount of $2,500 each.

88. Plaintiff and the class, pursuant to 18 U.S.C. § 2724(b)(1), are entitled to preliminary,

equitable, and declaratory relief, in addition to statutory damages of the greater of

money, actual and punitive damages, reasonable attorneys' fees, and Defendant's

profits obtained from the above-described violations. Unless restrained and enjoined,

Defendant will continue to commit such acts. Plaintiff remedy at law is not adequate

to compensate him for these inflicted and threatened injuries, entitling Plaintiff to

remedies including injunctive relief as provided by 18 U.S.C. § 2724(b)(1).

89. As a direct and proximate result of the aforesaid acts and activities of Defendant,

Plaintiff has sustained harm.

90. All of the acts and activities of Defendant, as heretofore set out, were performed

intentionally, fraudulently, maliciously, knowingly, conspiratorially, and on occasion,

negligently.

91. Plaintiff and Class Members were damaged thereby, and seek redress thereof.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, respectfully prays for judgment against Defendant as follows:

a) For an order certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23(a) and (b)(1)(a), (b)(2), and (b)(3);

b) For an order designating Plaintiff and his counsel as representatives of the Class;

c) For a declaration that Defendant's actions violated the Federal Driver's Privacy Protection Act, 18 U.S.C. §2721, and for liquidated damages, statutory damages, penalties, and remedies available as a result of Defendant's violations of the DPPA, but not less than liquidated damages in the amount of $2,500 for each Plaintiff and each member of the class;

d) As applicable to the Class mutatis mutandis, awarding injunctive and equitable relief including, inter alia: (i) prohibiting Defendant from engaging in the acts alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiff and the other Class Members motor vehicle records, or to whomever the Court deems appropriate; (iii) requiring Defendant to delete all motor vehicle records collected through the acts alleged above; (iv) awarding Plaintiff and Class Members full restitution of all benefits wrongfully acquired by Defendant by means of the wrongful conduct alleged herein; and (v) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

e) For a preliminary and permanent injunction restraining Defendant, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from:

1. Obtaining, directly or indirectly, Plaintiff and class member's motor vehicle records, without express consent   from the Texas Motor Vehicle Department, for purposes that violate the Driver's Privacy Protection Act;
2. Re-disclosing Plaintiff and class member's motor vehicle records for purposes that violate the DPPA;
3. Reselling Plaintiff and class member's motor vehicle records for purposes that violate DPPA;

f)  A permanent injunction enjoining and restraining Defendant, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually, from:

1.  Obtaining, directly or indirectly, Plaintiff and class member's motor vehicles records, derived in whole or part, from data maintained by the Texas Motor Vehicle Department, for purposes that violate the Driver's Privacy Protection Act;
2.  Using, processing, and disseminating, Plaintiff and class member's motor vehicles for purposes that violate the DPPA;
3.  Re-disclosing by reselling Plaintiff and class member's motor vehicles for purposes that violate DPPA;
4.  Using, directly or indirectly, Plaintiff and Class Members' motor vehicle records to conduct marketing and solicitation of Plaintiff and class member's, without express consent, for purposes that violate the DPPA.

g)  For an award to Plaintiff and the class of costs and expenses of this litigation;
h)  For an award to Plaintiff and the class for reasonable attorneys' fees;
i)  An award to Class Members of liquidated damages and punitive damages, as permitted by law and in such amounts to be proven at trial;
j)  For pre-and post-judgment interest as allowed by law; and
k)  For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: May 17, 2018                    Respectfully submitted,
                                       **LAW OFFICES OF JOSEPH H. MALLEY P.C.**

                                       By: /s/ Joseph H. Malley
                                       Law Office of Joseph H. Malley P.C.
                                       1045 North Zang Blvd
                                       Dallas, TX 75208
                                       Telephone: 214.943.6100
                                       Facsimile: 214. 943.6170
                                       malleylaw@gmail.com

                                       Attorney for Plaintiff Aaron Mulvey,
                                       individually, and on behalf of a class of
                                       similarly situated individuals